FRANCIS ELIHU HIGHT, petitioner-respondent,

v.

ELIZABETH MARIE MANNER HIGHT, defendant-appellant.

[Submitted October term, 1940.    Decided February 3, 1941.]

Mr. John J. Flaherty, Jr. (Mr. Samuel S. Stern, of counsel), for the petitioner-respondent.

Mr. Charles S. Okin, for the defendant-appellant.

PER CURIAM.

Francis Elihu Hight, the respondent, filed his petition in the Court of Chancery, praying a divorce from his wife, the appellant, upon the ground that on the 20th and 21st days of July, 1939, she committed adultery with one Walter Swan in her apartment in the city of New York.  To this petition the appellant filed an answer denying the charge and counter-claimed for a divorce charging her husband with desertion and with extreme cruelty.

The learned advisory master who heard the case advised a decree for the husband and a dismissal on the counter-claim. The wife appeals from the decree so advised.

The case was thoroughly tried for several days and the testimony is quite voluminous. The issues present factual questions the solution of which are difficult especially from the printed record. We recognize the advantage the trial judge had in seeing the witnesses and observing their demeanor. His conclusions are therefore not lightly disregarded. Nevertheless, it seems clear to us that the conclusion reached that the wife was guilty of adultery was not established.

These parties were married October 25th, 1915, and they lived together continuously until 1934. The husband in that year and in 1935 left his wife on three different occasions and remained away from her for various periods of time. On June 4th, 1935, he finally left her and has not lived with her since.

During the last years that they lived together their lives with each other were very unhappy. Each accused the other of misconduct and there was frequent quarreling. In spite of many and varied charges against the husband of extreme cruelty there was very little corroborative testimony to support the wife's recital. Several witnesses who could have testified to some of the charges were not produced nor their absence explained. The testimony, we think, fully justifies the conclusion reached below that neither acts of extreme cruelty nor willful desertion were established by the wife. The decree dismissing the counter-claim should therefore be affirmed.

The conduct of the wife in keeping her whereabouts secret from her husband; in not using her surname at her apartment and with the telephone company gives rise to the inference that she wished to be free in her movements and conduct without the interference or knowledge of her husband. She denies any such motive, however, and says that her reason for not advising him of her address was because she was in fear of him.

She had been acquainted with Swan for about four years. She says that she saw him on several occasions. There is no testimony of any impropriety whatever between them other than his spending the night with her in her apartment in

New York City on July 20th, 1939. That fact is not denied. She testified that she met him on that evening by appointment and went with him to dinner at a public restaurant; that he accompanied her to her apartment and was there alone with her from about nine-thirty P. M. until about five o'clock the next morning. She testified that they played chinese checkers until about midnight when he became violently ill and remained so for about four hours and was unable to leave; that she gave him medicine and made him some tea and that when he was sufficiently recovered to leave he did so. She denies that there was any misconduct. Swan did not testify. He did, however, make an affidavit in the cause in which he also denied the charges.

The husband says that he was trying to find out where his wife was living and that he had a friend follow Swan on July 20th from his place of business and that Swan was seen to meet appellant and take her to dinner and then was followed to her apartment. That Swan did not go with her into the apartment but soon followed her carrying a package which looked like a bottle of liquor. The watcher then telephoned the respondent who came to the apartment. The respondent then summoned by telephone another friend who was employed in a hotel in the vicinity. The three men say that in watching the windows of the apartment which they believed was that of the appellant they saw lights go on; they say that they went to the roof of an adjoining building from which they could see the windows of the appellant's apartment which was on the top floor. They all say that they only remained on the roof for two or three minutes and that as soon as they arrived at the point of vantage they saw an unclothed man in the appellant's bathroom; that immediately that he went out they saw appellant enter the bathroom dressed in a pink night gown. They left the roof and sought to gain entrance into the apartment by sending appellant a telegram intending to follow the messenger when he delivered it. The plan failed, however, because the appellant refused to respond when the messenger from the telegraph company sought to deliver it. Later a messenger tried again and the door was opened by appellant and the tele-

gram received by her. A short time before Swan left the apartment and was accosted in the hall by respondent. The two friends of respondent say that they were in the hall and saw Swan and the appellant, they say, as does the respondent, that the appellant was attired in a negligee over a pink night gown and that Swan and she were both intoxicated. The respondent and his friends went out in the street and had a conversation with Police Officer Frieburg. The appellant saw them from her window and asked the officer to come to her apartment. He testified that he did so and was asked by her to examine the apartment; which he did and found in order; and he also says that appellant was dressed in a house dress or kimono over a pink garment. The appellant also invited the telegraph messenger, Ryberg, to examine her apartment. He testified that he did so and found everything neat and orderly and that appellant had no negligee and night gown on but was fully dressed. Appellant testified that she was fully dressed and was wearing the same clothes she had worn the evening before at dinner; that she had not at any time changed them; that neither she nor Swan had entered the bedroom but had spent the time sitting in the living room except when he was nauseated when he went alone into the bathroom. She says that she and Swan had cocktails at dinner but had drunk nothing intoxicating at her apartment; that at her request Swan had purchased ginger ale on his way to the apartment and not liquor.

The appellant contends that it is physically impossible for one to see into her bathroom window from the roof of the adjoining building under the conditions described by respondent and his companions. The advisory master sent a special master of the court to make observations under the conditions testified to. The special master testified that he found a window curtain at the window through which nothing could be seen and he testified as to the view into the room which he had after pushing the curtain aside and by various sized openings of the window. The glass at this window is translucent, of frosted glass. The testimony of the appellant satisfies us that on the night in question there was a venetian blind on that window next to the glass and a curtain of rub-

berized material, to match the shower-bath curtain, which was across the window. To have been able to see into the room from the roof watchers would, we conclude, be able to see only if the window was opened fairly wide and would not be able to see at all if the window was equipped with the venetian blind and curtain. In any event a searching examination and consideration of the testimony leaves us in a state of doubt of the guilt of the appellant which under the cases entitles her to the benefit of that doubt. To prove adultery there must be convincing evidence of both inclination and opportunity. There is no question here that there was opportunity but the proofs do not show inclination.

The recent case of *Danielson* v. *Danielson, 127 N. J. Eq. 41,* is not unlike the case at bar in many respects. What this court said in that case is pertinent here:

"We have examined the facts with care having in mind the rule that the evidence, where circumstantial, as here, must be such that there is a decided preponderance to support the charge and that it must be of the character to satisfy the mind and leave the careful and guarded judgment of the court free from conscientious perplexing doubts as to whether the charge was proved. See *Berckmans* v. *Berckmans, 17 N. J. Eq. 453, 454.*"

For these reasons the decree appealed from is reversed as to the respondent's charge of adultery and is affirmed in dismissing the counter-claim of appellant as to desertion and extreme cruelty, without costs.

As to respondent's charge of adultery—

*For affirmance*—CASE, BODINE, DONGES, JJ.   3.

*For reversal*—THE CHIEF-JUSTICE, PARKER, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ.   10.

As to dismissal of counter-claim—

*For affirmance*—THE CHIEF-JUSTICE, PARKER, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ.   10.   ·

*For reversal*—CASE, BODINE, DONGES, JJ.   3.